IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
July 8, 2003 Session

## CHARTER OAK FIRE INS. CO. v. LEXINGTON INS. CO.

**Direct Appeal from the Chancery Court for Davidson County.**
**No. 00-3559-I The Honorable Irvin H. Kilcrease, Jr., Judge.**

_____

## NO. M2002-01752-COA-R3-CV - Filed March 2, 2004
_____

On November 16, 1997, a fire destroyed a Chili's Restaurant ("Chili's") in Nashville, Tennessee. At the time of the fire, the premises were owned and operated by RMR Investments and Gower Center, Ltd. ("RMR/Gower") and leased to Chili's. Under a 20-year lease agreement, Chili's agreed to insure the improvements against loss or damage by fire and other casualties and to insure against property damage and public liability arising out of occurrences on the premises. RMR/Gower was to be named as a loss payee or additional insured under the insurance policies obtained by Chili's. According to the lease, in the event the premises and/or the improvements were destroyed by fire or other casualty, Chili's had the option to terminate the lease, and all insurance proceeds were to be paid to RMR/Gower, except for the portion payable to Chili's for loss of personal property. Pursuant to the lease agreement, Chili's obtained insurance coverage through Lexington Insurance Company ("Lexington"). The certificate of insurance dated December 5, 1997 listed RMR/Gower as certificate holder and named RMR/Gower as additional insured. After the fire, Chili's elected to terminate the lease agreement due to the condition of the premises. Lexington paid the proceeds for the loss of the building to RMR/Gower, less amounts paid to Chili's for loss of personal property. RMR/Gower submitted an additional claim for damages it incurred for the loss of rental income and other charges it would have otherwise collected from Chili's. This claim was denied by Lexington. RMR/Gower then submitted a claim to its insurer Charter Oak Fire Insurance Company ("Charter Oak") for the loss of rental income, which Charter Oak paid. After Lexington refused to reimburse Charter Oak for the amounts it paid RMR/Gower for the loss of rental income, Charter Oak filed suit against Lexington for breach of contract under the theory of third party beneficiary. Parties filed cross motions for summary judgment. On June 26, 2002, the trial court granted Lexington's summary judgment motion and denied Charter Oak's motion. Notice of this appeal soon followed. For the reasons set forth below, the order of the trial court is reversed in part and affirmed in part.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Reversed in Part and Affirmed in Part**

1

Don R. Ash, Sp. J., delivered the opinion of the court, in which HIGHERS, J., and FARMER, J., joined.

Bridgett A. Wohlpart, Brentwood, Tennessee, for the appellant, Charter Oak Fire Insurance Company.

Michael Patrick McGovern, Knoxville, Tennessee, for the appellee, Lexington Insurance Company.

## OPINION

I.

This case arises out of a fire loss that occurred on November 16, 1997 at a Chili's restaurant in Nashville, Tennessee. At the time of the fire, Appellant Charter Oak Fire Insurance Company ("Charter Oak") insured RMR Investments, Inc. and Gower Center, Ltd. ("RMR/Gower"), the owners and lessors of the property on which the restaurant was located. Appellee Lexington Insurance Company ("Lexington") insured Chili's, a corporate subsidiary of Brinker International ("Brinker"), for "all risks of direct physical loss or damage."

RMR/Gower and Chili's entered into a 20-year lease agreement on December 5, 1985. The lease agreement provided as follows:

a)      Tenant shall insure the Improvements against loss or damage by fire and other casualties included in the so-called "Extended Coverage Endorsement" in an amount not less than eighty per cent (80%) of the replacement value thereof, less the cost of excavations, foundation, footings and underground tanks, conduits, pipes, pilings and other underground items.

b)      [requiring the tenant to secure liability insurance]

c)      It is agreed and understood that the insurance coverage provided for herein may be maintained pursuant to master policies of insurance covering other restaurant locations of Tenant and/or its corporate affiliates. All insurance policies required to be maintained by Tenant herein . . .shall evidence such insurance coverage by delivering to the Landlord, if requested, a copy of all policies or, at Tenant's option, certificates in lieu thereof issued by the insurance companies underwriting such risks. (Lease Agreement, Exhibit B, at pages 11-12).[1]

---

[1]  The Lexington policy at issue applied to numerous properties across the country in which Brinker/Chili's had an interest, not just the Nashville location at issue.

With respect to all losses and damage covered by insurance policies, RMR/Gower and Chili's agreed to mutually waive claims against each other. The lease does not address or preclude the assignment by way of subrogation any claim which either RMR/Gower or Chili's may have against some other person or entity not a party to the lease agreement.

Pursuant to the lease agreement, Chili's obtained insurance coverage through Lexington. Thereafter, Brinker/Chili's insurance representative, Sedgwick of Texas, Inc., issued evidences of insurance in the form of a certificate of insurance to RMR/Gower in which RMR/Gower was named as additional insured.[2]

On November 16, 1997, fire destroyed the Chili's restaurant. The following day, pursuant to the terms of the lease agreement, Chili's elected to terminate the lease due to the condition of the premises after the fire. When RMR/Gower submitted its initial claim, Lexington acknowledged RMR/Gower's right to payment of the proceeds under the Lexington policy for the loss of the building. Lexington paid this portion of the loss, less amounts paid to Chili's for loss of personal property. Thereafter, RMR/Gower submitted a second claim for its loss of rental income and other charges which it would have otherwise collected from Chili's totaling $62,991.38.[3] Lexington denied this claim.

RMR/Gower then submitted a claim to Charter Oak for payment under the Charter Oak policy for its loss of rental income. Subject to the "Other Insurance" provision set forth in the Charter Oak policy, Charter Oak paid RMR/Gower $62,991.38 for this loss.

Appellee Lexington contends that coverage for RMR/Gower under the Chili's policy was limited to the actual physical damage to the building, for which payment had already been made. Lexington has refused to reimburse appellant Charter Oak for the amounts it paid under its policy for the loss of rental income sustained by RMR/Gower arguing that neither the lease agreement nor the certificate of insurance entitled RMR/Gower to seek rental reimbursement.

On November 16, 2000, Charter Oak filed suit against Lexington and against Chili's to recover damages arising out of the fire. Charter Oak subsequently non-suited its claims against Chili's, and on December 7, 2001, filed an amended complaint to add a claim against appellee Lexington for breach of contract under the theory of third-party beneficiary. Parties then filed cross-motions for summary judgment. The trial court granted Lexington's summary judgment motion and denied Charter Oak's motion. Charter Oak filed a timely appeal. The issue for this court's consideration on appeal is whether the trial court erred in granting summary judgment to Lexington on the basis RMR/Gower was not an intended third-party beneficiary of the policy issued by Lexington with respect to loss of rental income.

---

[2] Paragraph 19 of the insurance policy grants Sedgwick James of Texas, Inc. permission to issue evidences of insurance "as and where required, adding Additional Named Assureds, Loss Payees and/or Mortgagees as their interest may appear . . . ." It was further agreed that Lexington waived the issuance of formal policy endorsements with respect to the additional named assureds, loss payees and/or mortgages.

[3] The claim submitted by RMR/Gower for loss of rental income included expenses for taxes, insurance, and maintenance for the percentage of space rented by Chili's in proportion to the entire amount of leased space in the RMR/Gower shopping center. Additionally, it was determined that rebuilding the Chili's Restaurant would take approximately 154 days. Thus, RMR/Gower's claim for loss of rental income with respect to Chili's was for 154 days.

3

Charter Oak argues it is clear RMR/Gower was an intended third-party beneficiary of the Lexington policy because the certificate of liability insurance specifically listed RMR/Gower as the certificate holder, thereby reflecting the intent of the principal parties "that the insurance was obtained, in part, for the benefit of RMR/Gower Center." Additionally, Charter Oak points to the terms of the lease agreement between Chili's and RMR/Gower which indicate Chili's agreed to obtain insurance listing RMR/Gower as an additional insured. Charter Oak argues this provision served as the consideration for RMR/Gower's agreement to waive any claim it may have against Chili's because it was intended to satisfy any obligation Chili's might have had for terminating the lease agreement.

Lexington, on the other hand, argues Charter Oak's third-party beneficiary theory of recovery fails because neither the lease agreement, the policy, or the certificate of insurance disclose an intent by the parties to provide the benefits of the rental income extension to RMR/Gower.

II.

A motion for summary judgment should be granted when the movant demonstrates that there are no genuine issues of material fact and that the moving party is entitled to a judgment as a matter of law. Tenn. R. Civ. P. 56.04. Because summary judgment involves only questions of law and not factual disputes, no presumption of correctness attaches to the trial court's ruling on a motion for summary judgment, and we review the grant of summary judgment *de novo*. **Mooney v. Sneed,** 30 S.W.3d 304, 306 (Tenn. 2000). The evidence must be viewed "in the light most favorable to the nonmoving party," and all reasonable inferences must be drawn in the nonmoving party's favor. **Staples v. CBL & Assocs, Inc.,** 15 S.W.3d 83, 89 (Tenn. 2000).

The question of whether a contract was intended for the benefit of a third person is generally regarded as one of construction, and the ascertainment of the intention of the parties to a written contract is a question of law, rather than a question of fact. **Hamblen County v. Morristown,** 656 S.W.2d 331, 335-36 (Tenn. 1983); **AmSouth Erectors, L.L.C. v. Skaggs Iron Works, Inc.,** 2003 Tenn. App. LEXIS 551 at *8 (April 22, 2003). The question presented, therefore, is one suited for disposition via summary judgment.

III.

Charter Oak claims it is entitled to recover against Lexington for breach of contract because RMR/Gower is a third party beneficiary of the insurance policy between Lexington and Chili's.[4] As a general rule, only parties to a contract are entitled to sue to enforce its provisions, and it is presumed the contract has been entered into for the benefit of those parties. However, the law recognizes an exception to the general rule where a person who is not a party to the contract can show the parties intended he benefit from the contract. **See, First Tennessee Bank Nat'l Ass'n v. Thoroughbred Motor Cars, Inc.,** 932 S.W.2d 928, 930 (Tenn. Ct. App. 1996); **Moore Constr. Co. v. Clarksville Dep't of Elec.,** 707 S.W.2d 1, 8-9 (Tenn. Ct. App. 1985). If, however, the

---

[4] In the present suit, Charter Oak is "stepping into the shoes" of its insured RMR/Gower and suing Lexington on its behalf.

benefit flowing to the third party is not intended, but merely incidental, the third party acquires no right to enforce the contract. **Willard v. Claborn,** 419 S.W.2d 168, 170 (Tenn. 1967).

In order to maintain an action as an intended beneficiary, a third party must first show: (1) a valid contract made upon sufficient consideration between the principal parties and (2) the clear intent to have the contract operate for the benefit of the third party. **First Tennessee,** 932 S.W.2d at 930. In the present case, Charter Oak and Lexington do not argue that there was not a valid contract between the principal parties. Lexington issued a valid insurance policy to Brinker/Chili's upon sufficient consideration of premiums paid. The argument arises as to whether there is a clear intent in the policy to have the contract operate for the benefit of RMR/Gower.

In **Owner-Operator Independent Drivers Ass'n v. Concord EFS, Inc.,** 59 S.W.3d 63 (Tenn. 2001), the Tennessee Supreme Court restated the analysis for evaluating third-party beneficiary cases. There, a group of independent truck drivers claimed they were third party beneficiaries of contracts between a bank that processed credit card transactions and two truck stop operators. The contracts at issue prohibited the truck stop operators from adding a surcharge to purchases of fuel made with credit cards. Despite the fact the plaintiffs were not parties to the contracts, they sued seeking damages and injunctive relief, contending they were third-party beneficiaries of the no-surcharge provision in the contracts. The court held the plaintiffs lacked standing to sue and therefore could not pursue their contract claims. **Id.** at 65. Importantly, the court announced a three-prong test to be used in determining whether a third party is an intended third-party beneficiary of a contract entitled to enforce the contract's terms:

A third party is an intended third-party beneficiary of a contract, and thus is entitled to enforce the contract's terms, if

(1) The parties to the contract have not otherwise agreed;

(2) Recognition of a right to performance in the beneficiary is appropriate to effectuate the intention of the parties; and

(3) The terms of the contract or the circumstances surrounding performance indicate that either:

(a) the performance of the promise will satisfy an obligation or discharge a duty owed by the promisee to the beneficiary; or

(b) the promisee intends to give the beneficiary the benefit of the promised performance.

**Id.** at 70.

When determining third-party beneficiary status, courts must examine the specific promise which the third parties contend was intended to benefit them. **Doramus v. Rogers Group, Inc.,** 2001 Tenn. App. LEXIS 127 at *55 (Feb. 28, 2001). Charter Oak contends RMR/Gower is the third-party beneficiary of the rental income extension in the insurance policy.

5

Applying the test from *Concord*, we first note the principal parties did not expressly agree that no third-party beneficiaries were intended. There is no explicit statement in the contract that the parties intended to reserve to themselves the benefits of their agreement. In fact, as Charter Oak points out, the certificate of liability insurance specifically listed RMR/Gower as an additional insured, thereby reflecting the insurance was obtained, at least in part, for the benefit of RMR/Gower.

The next question under *Concord* is whether recognition of a right to performance in RMR/Gower is appropriate to effectuate the intention of the parties to the contract. According to *Concord,* in applying part (2) of the test, a third party should not be deemed an intended beneficiary if so doing would undermine the parties' purposes. **Id.** at 71. The parties to the contract of insurance are Lexington and Brinker/Chili's. The policy expressly provides a mechanism to govern those instances where it was intended that a party other than Brinker/Chili's was to receive any coverage under the policy. The policy grants permission to Brinker/Chili's insurance representative, Sedgwick of Texas, Inc., to issue evidences of insurance "as and where required, adding Additional Named Assureds, Loss Payees and/or Mortgagees as their interests may appear . . . ." Pursuant to this provision, Sedgwick of Texas, Inc. provided RMR/Gower with a certificate of insurance in which it was named an "additional insured" of policy number J7X0051. Lexington argues this certificate of insurance extended casualty insurance coverage to RMR/Gower for <u>only</u> "ALL RISK OF PHYSICAL LOSS OR DAMAGE" with no additional insurance coverages included on the certificate of insurance, such as coverage for loss of rental income.[5] However, this argument ignores the effect of the plain language found on the certificate of liability insurance which reads:

> This certificate is issued as a matter of *information only* and confers no rights upon the certificate holder. This certificate *does not amend, extend, or alter the coverage afforded by the policies below*. (emphasis added).

Because the certificate has no effect on the coverage afforded by the policy, we must look to the policy itself to determine whether loss of rental income was an item included in the scope of coverage.[6] Attached to the part of the policy entitled "ALL RISK OF PHYSICAL LOSS OR DAMAGE" is a page entitled "RENTAL INCOME EXTENSION." With this extension, the parties to the contract agreed that the policy was extended to cover loss of rental income "resulting from necessary untenantability, caused by damage to or destruction of the building(s) . . . ." The term "rental income" is then defined as the "total anticipated gross cash or equivalent income from tenant(s), plus a similar value for that portion occupied by the Assured." Lexington argues that this

---

[5] Lexington acknowledges that the certificate of insurance also refers to general liability coverage, but this coverage is not at issue in this case.

[6] Courts should construe insurance policies as a whole to give effect to the parties' intentions as expressed in the policy itself. **Blaylock v. Brown Constr., Inc. v. AIU Ins. Co.,** 796 S.W.2d 146, 149 (Tenn. Ct. App. 1990). They should construe the policy's language reasonably and should not give it a forced construction that renders the policy ineffective or extends coverage beyond its intended scope. **Demontbreun v. CNA Ins. Cos.,** 822 S.W.2d 619, 621 (Tenn. Ct. App. 1991).

6

extension was included only for situations in which Brinker/Chili's did not receive rent from properties with respect to which it was landlord. Lexington reiterates the policy applied to numerous properties across the country in which Brinker/Chili's had an interest, and therefore could have included properties in which Brinker/Chili's, as owner, collected rent. Of course, none of this supposed intent is evidenced in the policy itself. By the unambiguous language of the policy, the rental income extension extended the coverage of the policy to cover economic loss in the form of lost rental income. As an additional insured, this coverage would apply to RMR/Gower as no attempts were made to limit this coverage for the sole benefit of Brinker/Chili's.

Perhaps if the Nashville location Chili's had been acting as a landlord at the time of the fire, such that it would be entitled to lost rental income, we could find that recognizing RMR/Gower as an intended beneficiary of the lost rental income extension would undermine the parties' purposes. But as it stands now, we cannot say that it does. Instead, upon a careful examination of the contract along with the certificate of liability insurance, we find the insurance policy recognized a right to performance in RMR/Gower.

The final question under *Concord* is whether the terms of the contract or the circumstances surrounding performance indicate that either the performance of the promise will satisfy an obligation or discharge a duty owed by the promisee to the beneficiary or that the promisee intends to give the beneficiary the benefit of the promised performance. **Id.** at 70. Chili's named RMR/Gower as additional insured under the Lexington policy because it was required to do so by the lease agreement it signed with RMR/Gower. We find in the lease agreement an expression of intent on the part of Chili's to give RMR/Gower the benefit of the promised performance. Under the lease, Chili's agreed "all insurance proceeds" payable under insurance policies maintained "by reason of the occurrence of such fire or other casualty " would be paid to the RMR/Gower except for a portion to be paid to Chili's for loss of its personal property.[7] Chili's received from Lexington insurance proceeds to cover the loss of Chili's personal property. According to the lease, Chili's agreed any other proceeds that would be payable under the policy was to go to RMR/Gower.

Because RMR/Gower satisfies each prong of the *Concord* test, we hold that RMR/Gower is an intended third-party beneficiary of the Lexington insurance policy with respect to the loss of rental income provision, and reverse the grant of summary judgment to Lexington on that basis.

IV.

We now turn to the question of whether the trial court should have granted summary judgment to Charter Oak based on finding RMR/Gower was an intended third-party beneficiary of the Lexington policy. On appeal, Lexington argues even if RMR/Gower could recover under the Lexington policy's loss of rental income coverage, any coverage provided under the policy would be excess to the coverage afforded to RMR/Gower in its policy with Charter Oak. The provision in the Lexington policy entitled "Other Insurance" states:

---

[7] This clause in the lease applied if Chili's terminated the lease pursuant to the clause allowing it to do so if the property was destroyed by fire. Chili's terminated the lease the day after the fire.

[The Lexington] policy shall only apply excess of:

a.     Any other insurance with respect to any loss or damage which at the time of happening of such loss or damage is insured by , or would, but for the existence of this Policy, be insured by any other insurance policy or policies . . . .

As demonstrated by the fact that Charter Oak paid RMR/Gower's claim for loss of rental income, the Charter Oak policy provided coverage for such a loss.[8] Lexington argues that because RMR/Gower was fully compensated for loss rental income by Charter Oak, any coverage the Lexington policy might provide RMR/Gower would be excess to the coverage under the Charter Oak policy.

The "Other Insurance" clause goes on to add that this provision will *not* apply to "policies specifically purchased by the Assured in excess of this Policy . . . , and in such event this Policy shall act as primary thereto." This raises the question of whether the Charter Oak policy was purchased by RMR/Gower in excess of the Lexington policy in which case the Lexington policy would act as the primary policy, or whether the Lexington policy was the excess policy to the Charter Oak policy. If the latter were true, it would appear Charter Oak could not recover from Lexington. Because Lexington has established a genuine issue of material fact in this regard, we affirm the trial court's decision to deny Charter Oak summary judgment.

V.

Accordingly, for the reasons set out above, the order of the trial court is reversed in part and affirmed in part. The grant of summary judgment in favor of appellee Lexington is reversed, and the denial of summary judgment to appellant Charter Oak is affirmed. This matter is remanded to the trial court for further proceedings consistent with this opinion. Costs of this appeal shall be shared between Charter Oak and Lexington equally.

_____
DON R. ASH, SPECIAL JUDGE

---

[8] Charter Oak has claimed it made payment to RMR/Gower for its loss of rental income subject to a similar "Other Insurance" provision set forth in the Charter Oak policy.

8